## Louisville Taxicab & Transfer Co. et al. v. Tungent's Adm'r.

May 12, 1950.

William J. Field, Judge.

2

Robert L. Page for appellants.

J. T. Robertson for appellee.

JUDGE REES—Affirming judgment, dismissing appeal.

This is an appeal from a judgment for $7,500 rendered against the Louisville Taxicab & Transfer Com-

pany and Doris Haynes Short in favor of the estate of Sadie Tungent who died from injuries received on October 15, 1945, in a collision between an automobile driven by her daughter, Mrs. Omie Bishop, and a taxicab driven by Miss Doris Haynes, now Mrs. Doris Haynes Short. There have been two trials of the case. On the first trial plaintiff recovered a judgment for $6,000, but on motion of the defendants the judgment was set aside and a new trial granted. The plaintiff, followed the correct procedure to preserve his right of appeal from that ruling, and has filed the record with a motion to substitute the first judgment for the judgment entered on the second trial in the event that judgment is reversed.

The accident in which Sadie Tungent was injured occurred shortly after 9 a. m., October 15, 1945, at the intersection of Brook and Kentucky Streets in Louisville. Kentucky Street is a boulevard 36 feet wide and extends east and west. Brook Street extends north and south and is 36 feet wide. There are stop signs on Brook Street on the north and south sides of the intersection. Sadie Tungent and her daughter, Omie Bishop, had been engaged in the huckstering business for several years. They purchased produce at the Hay Market in Louisville from various wholesalers, but principally from Earl Van Norman from whom they rented a truck to peddle their produce throughout the city. On the morning of the accident the two women and Mrs. Bishop's husband, as was their custom, drove to the Hay Market, arriving there about 4:30 a. m. It was the season of the year when produce is scarce, and they were unable to find anything on the market that they thought could be sold at a profit, and about 9 a. m. they left the market for home. Mrs. Bishop was driving the truck, and her husband sat on the front seat with her. Her mother sat on a box or stool in the bed of the truck. Mrs. Bishop testified that when she came to Kentucky Street traveling south she made a complete stop. She saw a Yellow Cab on Kentucky Street about half a block or more west of the intersection, and thinking that she had time to cross ahead of the cab she started the truck in low gear. Before completing the crossing she shifted into second gear, and after all of the truck except a foot or two had passed over Kentucky Street the taxicab struck the right rear end of the truck. The rear end of

the truck was knocked to the left and collided with a funeral car which had stopped on the east side of Brook Street at the stop sign and south of Kentucky Street. Sadie Tungent was knocked out of the truck by the impact, and her head struck the pavement when she fell. She died about a week after the accident.

Appellants argue four grounds for reversal of the judgment: (1) The verdict is contrary to the law and the evidence and, consequently, the appellants were entitled to a directed verdict in their favor; (2) the negligence of Omie Bishop was the proximate cause of the accident; (3) errors in the court's instructions; and (4) misconduct on the part of the plaintiff's counsel. Grounds 1 and 2 will be considered together.

It is argued that Omie Bishop was completely discredited as a witness and her testimony therefore should not be considered, and, further, that her negligence in continuing across the intersection after she saw the cab approaching from the right was the sole cause of the accident. Omie Bishop testified positively that she made a boulevard stop and proceeded into the intersection when the taxicab was at a distance from the intersection which would have afforded her ample time to complete the crossing if the cab had been traveling at a reasonable rate of speed. She said the cab's speed increased as it approached the intersection, and that it was traveling at a speed of 35 or 40 miles or more at the time of the collision. Her testimony that practically all of the truck had passed out of the intersection and that the cab was traveling at a high rate of speed is corroborated to some extent by the physical facts. Evidence was introduced showing that she had been convicted of a felony and was serving a term of eight years in the penitentiary for manslaughter (not connected with the accident in question), and there were some contradictions in her testimony at the two trials. She was contradicted in some respects by several witnesses, some of them disinterested, but all of this evidence went to her credibility as a witness which was a question for the jury. The appellant Doris Haynes Short, driver of the cab, testified that the truck failed to stop at the stop sign on the north side of Kentucky Street, and crossed Kentucky Street at a speed of 35 or 40 miles an hour. When asked how far she was from the truck when she first saw it,

she answered: "I just could not say. It just happened so quick that I could not say how far I was away from it." She admitted that on the first trial she had testified she was about five feet from the point of the collision when she first saw the truck. She also testified that about two feet of the rear end of the truck was "sticking out" into Kentucky Street when the collision occurred. At another point in her direct examination she said "I was coming so fast I tried to swerve around in the back of her, west on Brook, around it in the back of the truck, but I could not make it. I hit the rear end of the truck." Both the truck and the taxicab were badly damaged. A careful reading of the testimony of appellant Doris Haynes Short, driver of the taxicab, leaves the impression that she was not keeping a proper lookout just prior to the collision. Mrs. Kathryn Allen, the passenger in the taxicab, was introduced as a witness by appellants, and testified that the truck did not make a boulevard stop and crossed the intersection at a speed of 35 or 40 miles an hour, but later she was asked how far the taxicab was from the point of collision when she first saw the truck, and she said not more than the length of the cab. Several witnesses introduced by appellants, including two policemen who appeared on the scene shortly after the collision, testified that in their opinion both Sadie Tungent and her daughter, Omie Bishop, were drunk. Omie Bishop denied that either she or her mother had taken a drink of intoxicating liquor during the morning. Mr. Van Norman testified that both of them were sober when they left his establishment a few minutes before the accident. Mrs. Tungent had just received a fatal injury, evidently a badly fractured skull, and doubtless staggered, as some of the bystanders testified, when she attempted to walk and had the appearance of a person under the influence of intoxicants. However, the evidence was conflicting on the question of drunkenness, and could be considered by the jury for what it was worth as bearing on both the negligence and credibility of Omie Bishop. There can be no doubt that the evidence was sufficient to take the case to the jury and to sustain its verdict. Cases such as Barrett's Adm'r v. Louisville & N. R. R. Co., 206 Ky. 662, 268 S.W. 283, cited by appellants, which hold that one who undertakes to cross a railroad track in front of an approaching train when he knows or has notice of

its approach cannot recover for an injury thereby received, have no application under the facts of the present case where two automobiles were involved in a collision at a street intersection and there was evidence tending to show that the automobile in which the decedent was riding entered the intersection when the taxicab was at a considerable distance therefrom. Danville Cab Company v. Hendren, 304 Ky. 528, 201 S.W.2d 561, 563. KRS 189.330 (4) provides that the driver of a vehicle shall stop at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the highway as to constitute an immediate hazard. In Danville Cab Company v. Hendren, supra, the plaintiff, Hendren, made a boulevard stop when a taxicab was approaching the intersection from the right on the boulevard. It was argued there, as here, that the driver of the automobile crossing the boulevard was guilty of contributory negligence as a matter of law because after going into the intersection he could have seen the taxicab if he had been keeping a lookout and could have stopped instantly, thus avoiding the collision. It was held that the question of negligence was for the jury, and in the course of the opinion it was said: "Hendren had the right under the statute, supra, after obeying the stop sign, and seeing nothing in or so near to the intersection as to appear hazardous, to proceed. He also had the right to assume that the driver of the taxi would obey the law as to speed, and as to having his car under control, surely to use ordinary care to avoid a collision, even though he was on a preferred street."

In some jurisdictions the right of way given by statutes and ordinances to drivers on a through highway or boulevard who are approaching an intersection are construed as absolute, Annotations in 89 A.L.R. 838, and 136 A.L.R. 1497, but in this jurisdiction such regulations have been construed as giving the driver on the favored highway a relative preference and not the absolute and unqualified right to go ahead. Thomas v. Dahl, 293 Ky. 808, 170 S. W. 2d 337.

It is argued that the instructions defining the duties of the drivers of the respective automobiles are erroneous in that the instructions defining the duties of the

driver of the truck did not require her to sound the horn, if necessary, and the instruction defining the duties of the driver of the taxicab imposed upon her the duty to sound the horn if the jury believed from the evidence that such warning was necessary. The error, if any, in the instruction defining the duties of the driver of the truck was invited by the appellants who offered an instruction which omitted the duty to sound the horn. Appellants insist that the duty to sound the horn was erroneously included in the instruction defining the duties of the driver of the taxicab, since the driver of the truck saw the cab when it was half a block away, and Rabold v. Goyner, 285 Ky. 618, 148 S.W.2d 728, and similar cases are cited. In the present case, the driver of the taxicab, if she had been keeping a proper lookout, should have discovered the peril of the driver of the truck, and it was for the jury to say whether, under the circumstances, it was necessary to give a warning signal. Willett v. Bradas & Gheens, Inc., 283 Ky. 525, 142 S.W.2d 139.

The court properly gave a last clear chance instruction. Even if the driver of the truck was guilty of negligence in entering the intersection, the evidence is sufficient to justify the conclusion that her perilous position was obvious to one approaching from the right on Kentucky Street and should have been discovered by the driver of the taxicab if the latter had been keeping a lookout, and there would have been an opportunity to avoid the collision. Ramsey v. Sharpley, 294 Ky. 286, 171 S.W.2d 427.

Appellants complain of misconduct of appellee's counsel in regard to the conviction of Omie Bishop of a felony, and also to a statement made in his argument to the jury concerning the testimony of Bird S. Owen, the driver of the funeral car. Counsel for appellee attempted to show that while Omie Bishop was indicted for murder and convicted of manslaughter under an agreed plea of guilty, yet the killing was in defense of her husband and the plea of guilty was made by her under a misapprehension. The court refused to permit this evidence to be introduced, and an avowal was made. We find no prejudicial error to appellants' substantial rights in this respect. Counsel for appellee stated in his closing argument to the jury that the attorney for appellants had

8

made no reference to the testimony of Bird S. Owen because that witness had testified that he saw the truck in which decedent was riding standing on the south side of Kentucky Street. Counsel for appellants objected on the ground that Owen had given no such testimony, and upon the suggestion of appellee's attorney agreed that Owen's testimony be transcribed or be read to the jury by the reporter. The presiding judge said, in substance, that the jury would remember the evidence, and directed counsel to continue with his argument. No exception to the court's ruling was taken, and at the conclusion of the argument it was discovered that the reporter had left the courtroom and could not be located. It seems that nothing further was said or done concerning the matter. It would be unusual, if not impossible, for minor errors not to occur during the trial of a case of this kind, but we find no error of a substantial nature, and the judgment is accordingly affirmed. The appeal styled Tungent's Adm'r v. Louisville Taxicab & Transfer Company et al is dismissed.